# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 11-581


STATE OF LOUISIANA

VERSUS

BILL ERIC WINTERS


## CONSOLIDATED WITH

## KA 12-205


STATE OF LOUISIANA

VERSUS

BILL ERIC WINTERS


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR 129658 c/w 123989
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JIMMIE C. PETERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.


**REMANDED WITH INSTRUCTIONS.**

**Mark O. Foster**
**Louisiana Appellate Project**
**222 Adelaide Street**
**Natchitoches, LA 71457**
**(337) 572-5693**
**COUNSEL FOR DEFENDANT/ APPELLANT/ APPELLEE:**
    **Bill Eric Winters**

**Allan P. Haney**
**Assistant District Attorney**
**15th Judicial District Court**
**P. O. Box 4308**
**Lafayette, LA 70502**
**(337) 291-7009**
**COUNSEL FOR APPELLANT/APPELLEE:**
    **State of Louisiana**

**PETERS, Judge.**

On June 7, 2009, the State of Louisiana (state) charged the defendant, Bill Eric Winters, by bill of information with simple burglary, a violation of La.R.S. 14:62, and with possession of cocaine, a violation of La.R.S. 40:967. On the morning of trial, the state severed the possession of cocaine charge and the matter proceeded to trial on the simple burglary charge. The jury convicted the defendant of simple burglary on April 6, 2010, and on November 18, 2010, the trial court sentenced the defendant to serve seven years at hard labor.

Four days later, on November 22, 2010, the state charged the defendant as an habitual offender pursuant to La.R.S. 15:529.1. The trial court subsequently adjudicated the defendant as an habitual offender and sentenced him to serve twelve years at hard labor without the benefit of probation, parole, or suspension of sentence.

The defendant appealed his simple burglary conviction, asserting four assignments of error. In a separately filed appeal, the state asserted one assignment of error directed at the sufficiency of the sentence imposed in the habitual offender proceedings. We consolidated these appeals by order dated February 22, 2012. For the following reasons, we remand the matter to the trial court for a hearing to address the defendant's jury challenges pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986) in a manner consistent with this opinion. In doing so, we pretermit consideration of the remaining issues raised on appeal pending the outcome of the *Batson* hearing.

## DISCUSSION OF THE RECORD

There is little dispute concerning the facts in this matter. While on patrol on Sunday morning, June 7, 2009, Officer Forrest Blanton of the Lafayette Police

Department was ordered to proceed to 210 Coolidge Street. He arrived around 7:40 a.m. and observed a brown bicycle laid up against a wooden railing at the entrance to the Oncologics, Incorporated business office. Officer Nathan Thorton joined him, and he and Officer Thorton found the front office door unlocked and the lights inside off. Standing in the foyer of the office, Officer Blanton heard "rustling in one of the offices." When he looked down a long hallway in the direction of the noise, he observed the defendant peering into the hallway from one of the offices. He and Officer Thorton took the defendant into custody and initially charged him with unauthorized entry of a place of business. When they physically searched the defendant, they found that he was in possession of some "snacks and things."

The officers then had the dispatcher contact the alarm company providing security for the office to have someone with a key come to the scene because the building remained unsecured. John Ferguson responded to the request and, upon his arrival at the scene, he walked through the building with the officers. They observed no pry marks around the door and found no tools on the premises to suggest a physical break-in. However, the did find that the automatic-lock door had not functioned properly; it left the plunger stuck inside, causing the door to be unlocked. They freed the plunger and secured the door. At the request of the officers, Mr. Ferguson performed a cursory examination of the office space to determine if anything was missing or out of place. He did not notice any equipment missing, but did notice that "[s]ome cabinets and drawers were opened and had been rummaged through."

Mr. Ferguson testified the office is not open on Sunday, no employees are present on Sunday, and the building houses the company's accounts receivable

2

department and serves other corporate functions. On Monday after the Sunday break-in, Mr. Ferguson asked the employees at the Coolidge Street office to check for anything that might be missing. While he never received a direct report addressing this request, Kimberly Smith, one of the employees at the Coolidge Street office, testified that when she arrived for work on Monday, her desk drawer was open and "some Gobstoppers and some special dark chocolate" were missing from her desk, and her calendar on her desk had been moved. However, Ms. Smith did not provide the officers with a statement concerning the candy until July 28, 2009, or some forty-eight days after the incident.

Officer Thorton testified that the snacks found on the defendant at the time of his arrest included Gobstopper candy. Although both officers recalled the snacks found on the defendant, neither officer took those items into evidence. In fact, according to Officer Thorton, they were left at the scene.

In his appeal, the defendant asserts (1) that the evidence is insufficient to support his conviction of simple burglary, (2) that the trial court erred in not considering his complaint of ineffective assistance of counsel, (3) that the trial court erred in refusing to consider his *Batson* challenges, and (4) that the trial record is incomplete, thereby depriving him of his constitutional right to a complete record on appeal. In its appeal, the state asserts that the trial court erred in sentencing the defendant to an illegally lenient sentence in the habitual offender proceedings.

We find merit in the defendant's third and fourth assignments of error. These findings require that we pretermit the remaining assignments of error and remand this matter to the trial court for further proceedings consistent with this opinion.

3

**OPINION**

In his third and fourth assignments of error, the defendant asserts that the trial court erred in refusing to consider his challenges pursuant to *Batson*, and that the lack of a complete record on this issue deprives him of his constitutional right to a complete record on appeal.

The record initially provided this court did not contain the transcript of the jury selection process. Pursuant to the defendant's request, this court ordered that the record be supplemented with the *voir dire* transcript, which was subsequently provided. The defendant apparently believed that the supplemental transcript would include a discussion of the peremptory challenges, but it does not. The record as supplemented contains a portion of the proceedings associated with the jury selection process, but is itself incomplete.

The supplemental record establishes that the jury selection process began with the selection of twenty-four potential jurors for interrogation concerning their qualifications to serve. The defendant's third assignment of error arises from the fact that, during the jury selection process, the defendant's trial counsel moved to *Batson* challenge four potential jurors peremptorily excused by the state: Tray Arceneaux, Felton Landry, Kimberly Taylor, and Demetria Batiste. Nothing in the record establishes the race of these four jurors or, for that matter, the race of any of the other twenty.

The record does establish that Mr. Arceneaux is a twenty-three-old unmarried construction worker and a high school graduate. Mr. Landry did not state his age, but he is married and works offshore as a roustabout. He has a tenth-grade education and he and his wife have no children. Ms. Taylor is twenty-seven years old, has three children (the oldest is eight) and is separated from her husband.

4

At the time of trial, she was unemployed. Ms. Batiste is thirty-four years old and the mother of two children, ages eighteen and eleven. At the time of trial, she was unemployed and enrolled in cosmetology school.

During the *voir dire* process, all of the jurors were questioned by the trial court, the state's attorney, and the defendant's trial counsel concerning their ability to serve. The responses provided were generally appropriate to the inquiries. However, when the state's attorney propounded a hypothetical question whether stealing should be excused if the intent was to feed the perpetrator's children, Mr. Arceneaux did not respond. Ultimately, however, he stated that he could return a verdict based on the evidence presented and could follow the instructions as to the applicable law. Ms. Taylor had some concerns about her ability to render judgment if the defendant did not take the stand in his own defense. Still, she indicated that she return a verdict based on the evidence presented without regard to whether the defendant took the stand. Although she too stated that she could return a verdict based on the evidence presented, Ms. Batiste stated that she believed stealing food to feed one's children was an excuse for theft.

After the round of questioning was complete, the trial court summoned the parties to the jury deliberation room for a discussion outside the presence of the prospective jurors. The transcript of the exchanges in the jury deliberation room relating to individual jurors is incomplete. It begins with the exercise of challenges for cause by each side, is silent concerning the peremptory challenge phase, and ends with a short discussion concerning the defendant's *Batson* challenge. Specifically, the transcript reads follows:

[RECESS]

[IN JURY DELIBERATION ROOM OUTSIDE THE PRESENCE OF PROSPECTIVE JURORS]

5

THE COURT: All right, gentlemen, let's proceed. Any challenges for cause, Mr. Haney [counsel for the state]?

MR. HANEY: Yes, Your Honor. Ms. Babin, Loretta Babin. She seemed unsure and the incident she and her daughter had with the police officers - - I don't think - -

THE COURT: Granted. Mr. McCann [counsel for the defendant]?

MR. MCCANN: Ms. Katie Christensen. She indicated she could be a better judge if the defendant testified - -

THE COURT: Granted.

MR. HANEY: Will we be able to back strike - -

THE COURT: - - yes, we'll see - - yes.

[AFTER ALL CHALLENGES WERE MADE BY THE STATE AND DEFENSE, THE DEFENSE MOVED FOR BATSON CHALLENGES]

MR. MCCANN: I have to challenge – make the Batson challenge on Tray Arceneaux, Felton Landry, Kimberly Taylor, and Demetria Batiste.

MR. HANEY: Judge, there is no racial intent –

MR. MCCANN: I believe they should be questioned individually.

THE COURT: Denied. Denied. I note your objection for the record.

Thus, the entire on-the-record discussion concerning peremptory challenges is nonexistent. That being the case, we have no way of knowing what, if anything, was said relative to racial makeup of the jury pool, reasons for exercising individual preemptory challenges, or the trial court's response to any such discussions.

The court minutes also shed little additional light on the events in the jury deliberation room. Those minutes provide the following with relation to the jury selection process:

6

AT THE REQUEST OF THE COURT, 24 PORSPECTIVE JURORS WERE SEATED IN THE JURY BOX AND QUESTIONED BY THE VOIR DIRE AND THEIR DISPOSITIONS ARE BELOW:

| | |
|---|---|
| JOHNNY SHANKLIN | ACCEPTED |
| TRAY ARCENEAUX | EXCUSED BY STATE |
| FELTON LANDRY | EXCUSED BY STATE |
| KATIE CHRISTENSEN | EXCUSED FOR CAUSE |
| BERNARD HARRIS | EXCUSED BY DEFENSE |
| REBECCA NAQUIN | ACCEPTED |
| TAMMY ATWOOD | EXCUSED BY DEFENSE |
| LENA HILL | EXCUSED BY STATE |
| KIMBERLY TAYLOR | ACCEPTED (BACKSTRIKE) |
| DEMETRIA BATISTE | EXCUSED BY STATE |
| TODD VENABLE | ACCEPTED |
| MARTHA SIMON | ACCEPTED |
| HARRY BROWN JR | EXCUSED BY STATE |
| LORETTA BABIN | EXCUSED FOR CAUSE |
| VALARIE STANDEFER | ACCEPTED |
| THOMAS EASTERDAY | EXCUSED BY DEFENSE |
| MELINDA SANDERS | EXCUSED BY DEFENSE |
| ALLEN DEVILLIER | ACCEPTED |
| SHONNA BORUSSARD | EXCUSED BY DEFENSE |
| ALFREDO MENDOZA | ACCEPTED–ALTERNATE #1 |
| SANDY DUHON | EXCUSED–NOT NEEDED |
| JUDE BOUDREAUX | EXCUSED–NOT NEEDED |
| DAWN LOUVIERE | EXCUSED–NOT NEEDED |
| TAMMY BUTLER | EXCUSED–NOT NEEDED |

OUTSIDE THE PRESENCE OF THE POTENTIAL JURORS, BEFORE CHALLENGES WERE MADE BY STATE AND DEFENSE, THE STATE CHALLENGED FOR CAUSE, LORETTA BABIN AND GAVE ARGUMENTS, TO WHICH THE COURT GRANTED. THE DEFENSE THEN CHALLENGED FOR CAUSE, KATIE CHRISTENSEN AND GAVE ARGUMENTS, TO WHICH THE COURT GRANTED.

AFTER CHALLENGES WERE MADE BY STATE AND DEFENSE, THE DEFENSE MOVED FOR A BATSON CHALLENGE, ON POTENTIAL JURORS, TRAY ARCENEAUX, FELTON LANDRY, KIMBERLY TAYLOR, AND DEMETRIA BATISTE AND GAVE ARGUMENTS.

THE STATE THEN PRESENTED ARGUMENTS REGARDING THE DEFENSE'S BATON[SIC] CHALLENGES.

THE DEFENSE THEN REQUESTED THAT THOSE POTENTIAL JURORS BE INDIVIDUALLY QUESTIONED AND PRESENTED ARGUMENTS, TO WHICH THE COURT DENIED BUT NOTED THE DEFENSE'S OBJECTION.

From the minutes, we do know that, in addition to the two jurors that were excused for cause, the state exercised peremptory challenges against three men and two women (including the four at issue in the *Batson* challenge), and the defendant's trial counsel exercised peremptory challenges against two men and three women. The minutes also assert that the state presented arguments regarding the defendant's *Batson* challenges. However, the record does not support this assertion.

When a *Batson* challenge is asserted, the proponent bears the burden of presenting a *prima facie* showing of purposeful discrimination in the selection of the jury. The burden then shifts to the opponent to show a non-discriminatory basis for its peremptory challenge. The trial court then determines whether the proponent has carried his burden of proving purposeful discrimination. *State v. Nelson*, 10-1724 (La. 3/13/12), __ So.3d __. However, as stated in *State v. Sparks*, 88-17, p. 40 (La. 5/11/11), 68 So.3d 435, 470, "[t]he [Supreme] Court did not formulate any particular requirements for determining whether a defendant established a prima facie case. Rather, the Court expressed confidence in the trial judges' ability to determine the establishment of a prima facie case." In *State v. Draughn*, 05-1825, pp. 24-26 (La. 1/17/07), 950 So.2d 583, 602-03, *cert. denied*, 522 U.S. 1012, 128 S.Ct. 537 (2007), the supreme court stated:

> [T]he Supreme Court further clarified its *Batson* analysis with regard to *Batson's* first step in *Johnson v. California*, 545 U.S. 162, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005), and its analysis of *Batson's* third and final step in *Miller-El v. Dretke*, 545 U.S. 231, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). Our review of the defendant's claim is informed by the Supreme Court's pronouncements in *Johnson* and *Miller-El*.
>
> *Johnson* reiterated that "a prima facie case of discrimination can be made out by offering a wide variety of evidence, so long as the sum of the proffered facts gives 'rise to an inference of discriminatory purpose.'" *Johnson*, 545 U.S. at 169, 125 S.Ct. 2410, citing *Batson*,

476 U.S. at 94, 106 S.Ct. at 1712. In *Johnson,* the Supreme Court quoted *Batson's* explanation of what constitutes a *prima facie* case:

> [A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts *and any other relevant circumstances* raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. Id., at 96, 106 S.Ct. 1712 (citations omitted) (quoting *Avery v. Georgia*, 345 U.S. 559, 562, 73 S.Ct. 891, 97 L.Ed. 1244 (1953)). (Emphasis supplied).

*Johnson*, 545 U.S. at 169, 125 S.Ct. 2410.
. . . .

> *Johnson* makes clear that the burden of *production* in the first *Batson* step is squarely on the defendant.

Given the record before us, it is clear that, with the exception of Ms. Batiste, the responses from these potential jurors do not indicate any race-neutral basis for excluding them from the jury. Thus, the record suggests the possibility that a *Batson* violation exists.

A similar situation occurred in *State v. Givens*, 99-3518 (La. 1/17/01), 776 So.2d 443, where the equal protection challenge was gender-related. After the state struck several male potential jurors, the defendant objected, and the trial court denied the objection without comment. The Louisiana Supreme Court held:

> Because it is impossible to meaningfully review whether the defendant proved his claim that the prosecutor impermissibly struck male jurors solely because of their gender, we find it necessary to remand the matter to the trial court for an evidentiary hearing at which the court is to require the prosecutor to present gender-neutral reasons for the strikes. The trial court is then to make a final determination of

9

whether the defendant has met his burden of proving purposeful discrimination. If the trial court finds that the defendant cannot meet his burden under the applicable law, the defendant's conviction and sentence are affirmed. In the event that the trial court determines that the prosecutor did exercise the peremptory challenges in a discriminatory manner in violation of the Equal Protection Clause, the trial court is to grant the defendant a new trial. Both parties' right to appeal from any adverse decision regarding the *J.E.B.* claims is reserved.

*Id.* at 451.

Here, the transcript does not indicate any off-the-record discussion that may have concerned the peremptory or *Batson* challenges. The minutes indicate which jurors were accepted and excused by the parties, but the transcript jumps from the point of causal challenges to the *Batson* reference after peremptory challenges were made and decided. Obviously, a discussion took place concerning the peremptory challenges because the minutes indicate which potential jurors were excused by which party. However, neither the minutes nor the transcript contain that discussion or indicate whether any basis for each challenge was stated. Neither the minutes nor the transcript indicates the race of any of the potential jurors. What does appear in the record indicates the potential for a *Batson* violation. Further, the trial court erred when it failed to make the three-step *Batson* analysis when the defendant made his challenge and was denied the opportunity to present a *prima facie* showing of purposeful discrimination by the state. Unless the missing portion of the transcript can be furnished and shows the defendant in fact had that opportunity, this court, like the *Givens* court, must remand the matter for an evidentiary hearing to conduct the *Batson* analysis.

### DISPOSITION

Pursuant to the procedure set forth in *State v. Clark*, 97-1064 (La.App. 3 Cir. 4/1/98), 711 So.2d 738, *writ granted and case remanded in light of supplemental*

10

*filing*, 98-1180 (La. 9/25/98), 726 So.2d 2 and *State v. Fuslier*, 06-1438 (La.App. 3 Cir. 4/4/07), 954 So.2d 866, we pretermit consideration of the remaining assignments of error and remand this matter to the trial court with instructions to (1) conduct an evidentiary hearing on the *Batson* issue within thirty days and (2) lodge an appellate record, containing the transcript of the hearing, within fifteen days of the hearing.

**REMANDED WITH INSTRUCTIONS.**