# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-581

**STATE OF LOUISIANA**

**VERSUS**

**BILL ERIC WINTERS**

### CONSOLIDATED WITH

### 12-205

**STATE OF LOUISIANA**

**VERSUS**

**BILL ERIC WINTERS**

### AND WITH

### 13-303

**STATE OF LOUISIANA**

**VERSUS**

**BILL ERIC WINTERS**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR 123,989
HONORABLE KRISTIAN D. EARLES, DISTRICT JUDGE[1]

\*\*\*\*\*\*\*\*\*\*

**JIMMIE C. PETERS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

---

[1] Originally, Judge Edwin D. Rubin was the district judge assigned to this matter. However, on the first remand, he recused himself, and Judge Earles was appointed to hear the case.

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

**CONVICTION AND HABITUAL OFFENDER ADJUDICATION AFFIRMED; SENTENCE VACATED; AND REMANDED WITH INSTRUCTIONS.**

**Michael Harson**
**District Attorneyaz**
**Alan P. Haney**
**Assistant District Attorney**
**Fifteenth Judicial District**
**P. O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Edward J. Marquet**
**Louisiana Appellate Project**
**P. O. Box 53733**
**Lafayette, LA 70505-3733**
**(337) 237-6841**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Bill Eric Winters**

**Bill Eric Winters**
**West Carroll Detention Center**
**P.O. Box 307**
**Epps, LA 71237-0307**
**DEFENDANT/APPELLANT:**
     **Pro Se**

**PETERS, J.**

This matter is before us for the third time, and for the purpose of disposing of the issues raised by the original appeals, we consolidate herein this court's Docket Numbers 11-581, 12-205, and 13-303. The issues before us arise from a June 7, 2009 incident wherein the defendant, Bill Eric Winters, entered the Lafayette, Louisiana business office of Oncologics, Inc. without authorization. The State of Louisiana (state) charged the defendant with simple burglary, a violation of La.R.S. 14:62. A jury convicted the defendant of the offense, and the trial court initially sentenced him to serve seven years at hard labor. Thereafter, the state charged the defendant as a multiple or habitual offender pursuant to La.R.S. 15:529.1. This action by the state was based on the defendant's eight prior felony convictions. After a hearing, the trial court adjudicated the defendant as a multiple offender, vacated the original sentence, sentenced him to serve twelve years at hard labor, and ordered that the sentence be served without the benefit of probation, parole, or suspension of sentence. Both the defendant and the state appealed. The defendant's appeal was filed as Docket Number 11-581 in this court and was consolidated with the state's appeal which was filed in this court as Docket Number 12-205.

In his appeal, the defendant filed four assignments of error: (1) that the evidence is insufficient to support his conviction of simple burglary; (2) that the trial court erred in not considering his complaint of ineffective assistance of counsel; (3) that the trial court erred in refusing to consider his challenges to the jury based on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986); and (4) that the trial court record was incomplete, thereby depriving him of his constitutional record on appeal. In its appeal, the state asserted in its single assignment of error

that the trial court imposed an illegally lenient sentence when it sentenced the defendant as a multiple offender pursuant to La.R.S. 15:529.1.

When the matter was first before us, we considered only the defendant's third and fourth assignments of errors in concluding that the lack of a record of the trial court's consideration of the defendant's *Batson* challenge required a remand to the trial court for an evidentiary hearing. *State v. Winters*, 11-581, 12-205 (La.App. 3 Cir. 6/6/12), 92 So.3d 1194. Having reached that conclusion, we pretermitted consideration of the remaining assignments of error raised in the consolidated appeals and remanded the matter to the trial court "with instructions to (1) conduct an evidentiary hearing on the *Batson* issue within thirty days and (2) lodge an appellate record, containing the transcript of the hearing, within fifteen days of the hearing." *Id*. at 1200.

Our intent in remanding the matter to the trial court was to allow the trial court to provide this court with a complete record of the jury selection process as well as a decision on the *Batson* issue for us to review. When the matter returned to the trial court, the presiding judge recused himself based on the concern that he might be called as a witness in the *Batson* hearing.

When the matter returned to us, it was filed under Docket Number 12-1149. Upon review of the requested transcript, we discovered that the appointed trial judge interpreted our instructions to mean that it should develop a transcript to submit to this court so that we could make an initial determination on the *Batson* issue. Because we only review decisions of the trial court and do not render decisions on legal issues in the first instance, we remanded the matter again to have the trial court rule on the *Batson* issue. *State v. Winters*, 12-1149 (La.App. 3 Cir. 3/6/13) (unpublished opinion).

2

On March 19, 2013, the trial court rendered a ruling to the effect that "the defendant failed to carry his burden of proving purposeful discrimination." Based on that ruling, the matter is again before us, now as Docket Number 13-303. The record is in such a posture that we can now consider all of the assignments of error raised by the defendant and the state in *Winters*, 92 So.3d 1194.

## OPINION

### *Assignment of Error Number One*

Louisiana Revised Statutes 14:62(A) provides that "[s]imple burglary is the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, or any cemetery, with the intent to commit a felony or any theft therein, other than as set forth in R.S. 14:60." In this assignment of error, the defendant does not dispute that he entered the Oncologics, Inc. business office on June 7, 2009, without authorization. Instead, he argues only that the evidence presented at trial was insufficient to prove beyond a reasonable doubt that he had the specific intent to commit a felony or theft after he entered the structure.

It is well settled that when the sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court falls under what is generally referred to as the *Jackson* standard. That inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983). In fact, the *Jackson* standard has been legislatively embodied in La.Code Crim.P. art. 821. In applying the *Jackson* standard, the reviewing court cannot "substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford* , 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521.

3

Furthermore, a court may not reweigh the evidence or assess the credibility of the witnesses on appeal. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

It is equally well settled that the state must prove that the defendant had the specific intent to commit a felony or theft in the building he entered.

> Specific intent is required under LSA-R.S. 14:62, and it may be inferred from the circumstances and actions of the accused. *State v. Arceneaux*, 07-692, pp. 10-11 (La.App. 5 Cir. 3/25/08), 983 So.2d 148, 153, *writ denied*, 08-0892 (La.11/10/08), 996 So.2d 1067. Specific criminal intent is defined as "'that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.'" *Arceneaux*, 07-692 at 11, 983 So.2d at 153-54 (quoting LSA-R.S. 14:10(1)). Whether a criminal defendant possessed the requisite intent is for the trier of fact, and a review of the correctness of that determination is guided by the *Jackson* standard.

*State v. Naquin*, 10-474, p. 9 (La.App. 5 Cir. 2/15/11), 61 So.3d 67, 71-72.

To that end, "[d]isplacement of the victim's possessions may be indicative of the specific intent to commit a theft under La.R.S. 14:62." *State v. Vortisch*, 00-67, p. 6 (La.App. 5 Cir. 5/30/00), 763 So.2d 765, 768.

We summarized the trial court evidence in *Winters*, 92 So.3d at 1195-96, as follows:

> There is little dispute concerning the facts in this matter. While on patrol on Sunday morning, June 7, 2009, Officer Forrest Blanton of the Lafayette Police Department, was ordered to proceed to 210 Coolidge Street. He arrived around 7:40 a.m. and observed a brown bicycle laid up against a wooden railing at the entrance to the Oncologics, Incorporated business office. Officer Nathan Thorton joined him, and he and Officer Thorton found the front office door unlocked and the lights inside off. Standing in the foyer of the office, Officer Blanton heard "rustling in one of the offices." When he looked down a long hallway in the direction of the noise, he observed the defendant peering into the hallway from one of the offices. He and Officer Thorton took the defendant into custody and initially charged him with unauthorized entry of a place of business. When they physically searched the defendant, they found that he was in possession of some "snacks and things."
>
> The officers then had the dispatcher contact the alarm company providing security for the office to have someone with a key come to the scene because the building remained unsecured. John Ferguson

4

responded to the request and, upon his arrival at the scene, he walked through the building with the officers. They observed no pry marks around the door and found no tools on the premises to suggest a physical break-in. However, [they] did find that the automatic-lock door had not functioned properly; it left the plunger stuck inside, causing the door to be unlocked. They freed the plunger and secured the door. At the request of the officers, Mr. Ferguson performed a cursory examination of the office space to determine if anything was missing or out of place. He did not notice any equipment missing, but did notice that "[s]ome cabinets and drawers were opened and had been rummaged through."

Mr. Ferguson testified the office is not open on Sunday, no employees are present on Sunday, and the building houses the company's accounts receivable department and serves other corporate functions. On Monday after the Sunday break-in, Mr. Ferguson asked the employees at the Coolidge Street office to check for anything that might be missing. While he never received a direct report addressing this request, Kimberly Smith, one of the employees at the Coolidge Street office, testified that when she arrived for work on Monday, her desk drawer was open and "some Gobstoppers and some special dark chocolate" were missing from her desk, and her calendar on her desk had been moved. However, Ms. Smith did not provide the officers with a statement concerning the candy until July 28, 2009, or some forty-eight days after the incident.

Officer Thorton testified that the snacks found on the defendant at the time of his arrest included Gobstopper candy. Although both officers recalled the snacks found on the defendant, neither officer took those items into evidence. In fact, according to Officer Thorton, they were left at the scene.

The defendant entered the building at a time when no one was present and without authorization. The responding officers heard "rustling" before they apprehended the defendant, and Mr. Ferguson observed that opened cabinets in the office had been "rummaged through." Some candy was reported missing, and the missing candy corresponded to the candy found on the defendant by the arresting officers. Considering the evidence in a light most favorable to the state, we find that a rational trier of fact could have found that the state proved beyond a reasonable doubt that the defendant had the specific intent to commit a theft after entering the business office. Therefore, we find no merit in this assignment of error.

5

## Assignment of Error Number Two

In this assignment of error, the defendant asserts that the trial court erred in not considering his claim of ineffective assistance of counsel made on the morning of trial. On that day, immediately after the trial court denied his trial counsel's motion for continuance based on the defendant's medical condition, the defendant asked to address the trial court. The trial court granted his request, and the defendant complained that his trial counsel had spent little time preparing him for trial, that he had failed to file relevant motions, and that he only gave the defendant's a day's notice that they were going to trial. Specifically, the defendant informed the trial court that he did not believe his lawyer adequately prepared for trial.

The defendant, however, did not ask that new counsel be appointed or that the trial be continued on this basis. In fact, despite his complaints to the trial court, he did not ask that the trial court make any ruling on his comments, nor did he object when the trial court ended the discussion and called the prospective jurors into the courtroom.

Failure to make a contemporaneous objection to a perceived error of the trial court waives a defendant's right to complain of error on appeal. La.Code Crim.P. art. 841. Because the defendant neither requested nor objected to any action of the trial court, we will not consider this assignment of error at this time. In declining to consider the assignment of error, we further note that an ineffective assistance of counsel claim may be addressed in an application for post-conviction relief. *State ex rel. of A.B.*, 09-870 (La.App. 3 Cir. 12/9/09) 25 So.3d 1012.

## Assignment of Error Number Three

The defendant's third assignment of error relates to his *Batson* challenge to the composition of the jury. On the first remand, the trial court did conduct a

hearing and the transcript of this hearing adequately addressed the arguments at trial arising from the defendant's *Batson* challenge. We summarized the evidence presented at that hearing in *Winters*, 12-1149, pp. 2-4, as follows:

> Thereafter, counsel for the State of Louisiana (state) and the defendant stipulated that those considered for this jury included four black males, five black females, six white males, eight white females, and one Hispanic male; that the jury ultimately selected included one black male, two white males, three white females; and that the alternate was the Hispanic male. The litigants also stipulated that the state peremptorily challenged three black males and two black females.

> The state then called Randall McCann, the defendant's counsel at trial, as a witness. Mr. McCann testified that the state used only five of its peremptory challenges, all on black prospective jurors. He then stated the following concerning these challenges:

>> I made the *Batson* challenge claiming that none of those jurors should have been stricken for any particular reason. And then [counsel for the state] offered his reasons and Judge Rubin denied my Motion.

> The state then called Alan Haney, counsel for the state in the defendant's trial, as a witness. He recalled that when the defendant's counsel first raised the *Batson* challenges, Judge Rubin did not wait for the state to present race-neutral reasons for exercising its challenges before ruling. Instead, Judge Rubin immediately rejected the *Batson* challenge. However, Mr. Haney testified that he recognized that if the record did not contain race-neutral reasons, the matter would be remanded by the reviewing court for failure to comply with the *Batson* three-prong analysis. That being the case, he testified that even after the ruling, he recited his race-neutral reasons to Judge Rubin. According to Mr. Haney, Judge Rubin did not comment concerning the sufficiency of his race-neutral reasons. Thus, the proceeding was left without a consideration of the second prong of the *Batson* analysis.

> With regard to the race-neutral reasons provided to Judge Rubin, Mr. Haney testified that while the trial had occurred two years before his testimony and he was unable to find the notations he had made at the time, he did recall the basic reasons he had provided to Judge Rubin at the time of the *Batson* challenge. His basic recollection was that with regard to Ms. Hill, she had testified that her sister was a drug addict; and with regard to the remaining four jurors, he was concerned with their response to questions concerning whether someone should be punished for stealing to feed his family. Based on this information, he decided to peremptorily challenge all five jurors.

7

We set forth the elements of a *Batson* challenge in *Winters*, 92 So.3d 1194, and will not repeat that analysis herein.  Based on our review of the transcript now before us, we find no error in the trial court's determination that "the defendant failed to carry his burden of proving purposeful discrimination."  Therefore, we find no merit in this assignment of error.

### *Assignment of Error Number Four*

The defendant's complaint in this assignment of error was that the appellate record was not complete in that it did not contain a transcript of the *Batson* argument.  Our remand as well as the trial court's response to that remand renders this assignment of error moot.

### *State of Louisiana's Assignment of Error*

In its sole assignment of error, the state asserts that the trial court erred in imposing an illegally lenient sentence on the defendant.  Specifically, the state asserts that because of the defendant's particular multiple offender status, the law mandates a minimum sentence of life in prison without benefit of parole, probation, or suspension of sentence.  We agree.

The habitual offender hearing established that the defendant had been convicted of the following felony offenses in the Fifteenth Judicial District Court prior to the June 7, 2009 simple burglary:

Simple burglary on March 26, 1991, in Docket Number 59356.

Possession of cocaine on August 31, 1992, in Docket Number 62736.

Simple burglary on May 12, 1997, in Docket Number 71266.

Possession of cocaine on December 4, 1997, in Docket Number 75906.

Unauthorized entry of a place of business on March 27, 2003, in Docket Number 97031.

Simple burglary on March 16, 2008, in Docket Number 99342.

8

Simple burglary on December 16, 2008, in Docket Number 113242.

Thus, his conviction arising from the June 7, 2009 simple burglary constituted the defendant's eighth felony conviction and his fifth felony conviction for simple burglary.

At the time of the June 7, 2009 offense, La.R.S. 14:62(B) provided a maximum incarceration sentence of twelve years with or without hard labor for conviction of simple burglary. At that same time, La.R.S. 15:529.1[2] provided in pertinent part:

> A. (1) Any person who, after having been convicted within this state of a felony . . . thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
> . . . .
> (b) If the third felony is such that upon a first conviction, the offender would be punishable for imprisonment for any term less than his natural life then:
>
> (i) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction; or
>
> (ii) If the third felony and the two prior felonies are . . . crimes punishable by imprisonment for twelve years or more . . . the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
>
> (c) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
>
> (i) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life; or
>
> (ii) If the fourth felony and two of the prior felonies are felonies defined as a crime . . . punishable by imprisonment for twelve years or more . . . the person shall be imprisoned for the remainder of

---

[2] This statute has undergone various legislative changes since the defendant was charged.

his natural life, without benefit of parole, probation, or suspension of sentence.

Clearly, given the defendant's record, the mandated sentence is life in prison without the benefit of parole, probation, or suspension of sentence. While a trial court should normally defer to a statutorily mandated sentence, it may deviate from that statutorily mandated sentence if it determines that a particular sentence (including one mandated by the Habitual Offender Law) is excessive under Article I, Section 20 of the Louisiana Constitution. *State v. Johnson*, 97-1906, (La. 3/4/98), 709 So.2d 672. However:

> A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. *See State v. Dorthey*, [623 So.2d 1276, (La.1993)] at 1281 (Marcus, J., concurring); *State v. Young*, [94-1636 (La.App. 4th Cir. 10/26/95), 663 So.2d 525]. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality.

> A trial judge may not rely solely upon the non-violent nature of the instant crime or of past crimes as evidence which justifies rebutting the presumption of constitutionality. While the classification of a defendant's instant or prior offenses as non-violent should not be discounted, this factor has already been taken into account under the Habitual Offender Law for third and fourth offenders. LSA-R.S. 15:529.1 provides that persons adjudicated as third or fourth offenders may receive a longer sentence if their instant or prior offense is defined as a "crime of violence" under LSA-R.S. 14:2(13). Thus the Legislature, with its power to define crimes and punishments, has already made a distinction in sentences between those who commit crimes of violence and those who do not. Under the Habitual Offender Law those third and fourth offenders who have a history of violent crime get longer sentences, while those who do not are allowed lesser sentences. So while a defendant's record of non-violent offenses may play a role in a sentencing judge's determination that a minimum sentence is too long, it cannot be the only reason, or even the major reason, for declaring such a sentence excessive.

> Instead, to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:

[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.

*Young*, 94-1636 at pp. 5-6, 663 So.2d at 528 (Plotkin, J., concurring).

When determining whether the defendant has met his burden of proof by rebutting the presumption that the mandatory minimum sentence is constitutional, the trial judge must also keep in mind the goals of the Habitual Offender Law. Clearly, the major reasons the Legislature passed the Habitual Offender Law were to deter and punish recidivism. Under this statute the defendant with multiple felony convictions is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the laws of our state. He is subjected to a longer sentence because he continues to break the law. Given the Legislature's constitutional authority to enact statutes such as the Habitual Offender Law, it is not the role of the sentencing court to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders. Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates our constitution.

Finally, if a sentencing judge finds clear and convincing evidence which justifies a downward departure from the minimum sentence under the Habitual Offender Law, he is not free to sentence a defendant to whatever sentence he feels is appropriate under the circumstances. Instead, the judge must sentence the defendant to the longest sentence which is not constitutionally excessive. This requires a sentencing judge to articulate specific reasons why the sentence he imposes instead of the statutory mandatory minimum is the longest sentence which is not excessive under the Louisiana Constitution. Requiring a sentencing judge to re-sentence a defendant in this manner is in keeping with the judiciary's responsibility to give as much deference as constitutionally possible to the Legislature's determination of the appropriate minimum sentence for a habitual offender.

We emphasize to sentencing judges that departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations. As Chief Justice Calogero noted in a prior case:

The substantive power to define crimes and prescribe [sic] punishments lies in the legislative branch of government. [citation omitted]. Our decision in *State v. Dorthey*, 623 So.2d 1276 (La.1993), did not purport to grant a district court the power to usurp that legislative

11

> prerogative or to impose what the court believes is the most appropriate sentence for a particular offender in a particular case. *Dorthey* gives the district court the authority to depart from the mandatory minimum sentences provided by the legislature only in those relatively rare cases in which the punishment provided violates the prohibition of La. Const. art. I, § 20 against excessive sentences.
>
> *State v. Hamilton*, 95-2462 at p. 1 (La.2/2/96), 666 So.2d 655, 656 (Calogero, C.J., concurring); *see also State v. Dorthey*, *supra* (Marcus, J., concurring) (noting that situations where sentencing courts should sentence defendants below the minimum mandated by the Habitual Offender Law are "rarely presented").

*Id.* at 676-77 (alternations in original).

Two of the defendant's brothers testified on his behalf at the habitual offender hearing. His older brother, Dennis Winters, testified that while the defendant is very intelligent, he has made many mistakes. According to Dennis Winters, the defendant was homeless at the time of the incident, was in generally poor health, and his only source of income was workers' compensation benefits. James Winters, the defendant's younger brother, testified that his goal was to help his brother overcome his drug addiction. He suggested that the defendant is not a violent person and volunteered to "take him in and work with him the way [his own] older brother worked with [him, James Winters]" to get him straight.

Members of law enforcement also offered their opinions regarding the defendant. One former officer of the Lafayette City Police Department, Gary Copes, knew the defendant and James Winters both in his capacity as an officer and as the overseer of a correctional facility where they were once inmates. He knew little about the defendant, but explained that his lack of familiarity suggested that the defendant probably did very well while incarcerated. He testified further that there were "no issues" and "no write-ups," and that the defendant "didn't cause problems." He believed the defendant to be more intelligent than the

average inmate and that this attribute would make him a better candidate for rehabilitation. However, in comparing the defendant to other inmates, he found nothing exceptional about him.

Lafayette Police Chief Jim Craft testified that he had investigated the defendant "well over ten times" and that he believed the defendant had over twenty-two arrests over the span of his life. He considered the defendant exceptional only in how many more burglaries the defendant had committed than the average burglar. Chief Craft categorized the defendant "as a career criminal who victimized a lot of citizens in our City."

In this case, the trial court did not conclude that the defendant's situation was exceptional under the holding in *Johnson*, 709 So.2d 672. Instead, the trial court concluded that the version of La.R.S. 15:529.1(A)(1)(b)(i) in effect on June 7, 2009, was the appropriate section of the habitual offender statute under which the defendant should be sentenced. Application of this provision mandated a sentence of not less than eight years and not more than twenty-four years. Thus, the trial court sentenced the defendant to serve twelve years as a multiple offender.

In reaching this conclusion, the trial court failed to recognize that the defendant was an eight-time felony offender and not a third-felony offender. Even assuming that the third-felony-offender portion of the statute was applicable (and we do not so assume), the trial court further failed to consider that the defendant's simple burglary conviction would have fallen within the sentencing range of La.R.S. 15:529.1(A)(1)(b)(ii) in that the maximum sentence applicable to simple burglary under La.R.S. 14:62 is twelve years.

Based on the record before us, we find no extraordinary circumstances to allow the trial court to deviate from the sentencing requirements of La.R.S. 15:529.1; we find that the trial court erred in sentencing the defendant as a third-

13

felony offender; and we find that the proper sentencing provision applicable to the defendant is La.R.S. 15:529.1(A)(1)(c)(ii). Thus, we find merit in the state's assertion that the defendant should have been sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence.

We vacate the defendant's twelve-year sentence and remand the matter to the trial court for resentencing pursuant to La.R.S. 15:529.1(A)(1)(c)(ii).

## *Errors Patent*

In accordance with La.Code Crim.P. art. 920, we review appeals for errors patent on the face of the record. After reviewing the record, we recognize one such error patent that requires correcting.

The record before us reflects that the trial court failed to advise the defendant of the prescriptive period for filing an application for post-conviction relief as required by La.Code Crim.P. art. 930.8. That being the case, we also remand the matter with instructions to the to the trial court judge to inform the defendant of the provisions of La.Code Crim.P. art. 930.8 by sending the appropriate written notice to him within thirty days of the rendition of this opinion and to file written proof of the receipt of this notice by the defendant in the record; or in this case, because the defendant is to be resentenced, by advising the defendant of the provisions of La.Code Crim.P. art. 930.8 at resentencing rather than by written notice. *See generally State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

## DISPOSITION

We affirm the defendant's conviction and adjudication as a multiple offender. We vacate the defendant's sentence and remand the matter to the trial court for resentencing pursuant to the requirements of La.R.S. 15:529.1(A)(1)(c)(ii). We also remand the matter to the trial court with

14

instructions to inform the defendant, in writing and within thirty days of the rendition of this opinion (or at the discretion of the trial court, orally at the resentencing hearing), of the appropriate prescriptive period for filing an application for post-conviction relief pursuant to La.Code Crim.P. art. 930.8. In the event the trial court should choose to inform the defendant in writing before the resentencing hearing, the trial court is ordered to file written proof in the record that the defendant received the notice.

**CONVICTION AND HABITUAL OFFENDER ADJUDICATION AFFIRMED; SENTENCE VACATED; AND REMANDED WITH INSTRUCTIONS.**